## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**STEFANIE KENT,**
            **Plaintiff,**

**v.**                                          **Case No: 5:09cv90/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
            **Defendant.**

_____

### REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Kent's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

        Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Ms. Kent filed applications for benefits claiming an onset of disability as of August 1, 2002, later amended at the hearing to November 19, 2003. The applications were denied initially and on reconsideration, and Ms. Kent requested a hearing before an administrative law judge (ALJ). A hearing was held on June 11, 2007 at which Ms. Kent was represented by counsel and testified. There was no expert testimony at the hearing. The ALJ entered an unfavorable decision (tr.15-23) and Ms. Kent requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review. The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Kent had not engaged in substantial gainful activity since November 19, 2003; that she had a severe condition of a history of right lower extremity fracture with leg length discrepancy, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1; that she was unable to perform her past relevant work as a store clerk, pizza baker, certified nursing assistant, cashier, sewing machine operator or shirt folder; that she had the residual functional capacity to perform the full range of sedentary work; that she was 36 years old with a high school education; that considering her age, education, work experience and residual functional capacity there were jobs that existed in significant numbers in the national economy that she could perform; and that she was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

 1. Is the individual currently engaged in substantial gainful activity?

 2. Does the individual have any severe impairment?

 3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

 4. Does the individual have any impairments which prevent past relevant work?

 5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir.

1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

In January 2001 Ms. Kent fell off a porch and fractured her right leg. A long leg cast was applied by a Dr. Moore in Dothan, Alabama (tr. 139). Ms. Kent followed up with an orthopedic surgeon, Richard Laubaugh, M.D., who saw her on February 14, 2001. He noted that her leg appeared to be fairly straight and an x-ray indicated that her tibia had been fractured (tr. 139). On March 27, 2001 Dr. Laubaugh removed the long leg cast and applied a short cast (tr. 137-138). On April 10, 2001 the short cast was removed but there was movement at the fracture site and Dr. Laubaugh determined that an open reduction was required (tr. 136). Open reduction with internal fixation and insertion of an intramedullary (IM) rod was performed on April 27, 2001 (tr. 134-135). On November 1, 2001 Ms. Kent complained of pain in the fracture site. Dr. Laubaugh felt that the fracture was stable but that there was a screw directly under a painful spot (tr. 133). The screw was removed on November 28, 2001 (tr. 132).

Ms. Kent returned to Dr. Laubaugh on December 3, 2001 still complaining of pain and walking with a cane (tr. 131). On January 14, 2002 Ms. Kent reported that she had swelling in her ankle if she did not wear her support stocking (tr. 130). On May 2, 2002 Ms. Kent complained of muscle spasms and pain around the fracture site, worse with rainy weather. On examination the fracture was stable, all wounds were healed and there was no discomfort when Dr. Laubaugh applied rotation stress to the fracture. An x-ray showed the fracture in good position with no signs of loosening. Ms. Kent was encouraged to increase her activities. She was using a cane and was told she should taper off its use (tr. 129).

On September 16, 2002 Ms. Kent complained of popping in her leg and Dr. Laubaugh was able to feel popping and clicking (tr. 127). On November 26, 2002 Ms. Kent complained of pain, especially during cold weather. On examination, healing was good, alignment was good and the right ankle seemed slightly larger than the left because of swelling. An x-ray showed solid healing. Dr. Laubaugh explained that patients frequently have pain in cold weather with IM rods and that Ms. Kent might consider having her IM rod removed. She declined to do so at that time (tr. 126). Ms. Kent last saw Dr. Laubaugh on May 6, 2003 complaining of continued pain. Dr. Laubaugh again suggested she consider having her IM rod removed (tr. 125).

Ms. Kent was referred for psychological evaluation to George Horvat, Ph.D., a licensed psychologist, whom she saw on June 8, 2005. She told Dr. Horvat that she "just need[ed] some help" mentally and that she also had problems with her ankle, diabetes, back pain, and chronic pain (tr. 156). On mental status examination Ms. Kent was alert, neat and clean. She walked with a cane, and her motor activity was slow. Her attention was distractable, her concentration preoccupied and her memory defective. Her mood and her affect were depressed and her rate of speech was normal but low. She appeared to be preoccupied with thoughts of suicide and had hallucinations of something being "on her" when she was sleeping. She also reported hearing voices. Her organization was goal directed but she appeared to be at below average intelligence. Her main stressors were her work and her illness. Her social judgment was "street smart" and when asked whether there was something wrong with her, she said she was "stressed out." Dr. Horvat's diagnosis was pain disorder, major depressive disorder, recurrent. He felt there was a need to determine Ms. Kent's intellectual and memory functioning, and that she would not be capable of managing her funds until further information was gathered (tr. 156-158).

Ms. Kent had three separate physical evaluations. The first, by Sam R. Banner, D.O., an occupational medicine specialist, was done on November 10, 2004.

Ms. Kent gave a history of right lower leg fracture and resulting surgery with hardware removal. She said she continued to have problems walking and used a cane. She complained of chronic right lower leg pain and occasional swelling and inability to walk or stand for prolonged periods. On physical examination her right leg was one inch shorter than her left leg and there was a surgical scar above her ankle. She demonstrated stiffness getting on and off the examination table and walked with a profound limp. She could not squat, or heel/toe walk. She had decreased strength in her right knee, sensation to pinprick was intact, her reflexes and grip were normal, straight leg raising was negative and there was no atrophy of any muscle group. Fine and gross motions in both hands were satisfactory. Dr. Banner's diagnosis was right lower leg pain, and possible hypertension. He concluded that she would need continued medical care (tr. 140-143).

On June 1, 2005 Dr. Bannwer performed a second examination. Ms. Kent's history was consistent with her earlier examination as was the physical examination. However, Dr. Banner noted atrophy in the right calf of 10-3/4 inches versus 13 inches in the left and 16-3/4 inches in the right thigh versus 18 in the left. Dr. Banner's diagnosis and prognosis were the same (tr. 152-155).

Ms. Kent's third examination was performed by Kirk Mauro, M.D., a medical rehabilitation specialist, on October 12, 2005. Ms. Kent gave a history consistent with those previously given. On physical examination there was no evidence of sensory deficits and there was normal muscle strength in the arms and slightly decreased muscle strength in the right hip and knee. Strength of the right ankle was not tested due to complaints of pain. Reflexes were normal, the low back was non tender and there was no spasm. Straight leg raising was negative bilaterally. The right leg was shorter than the left leg by approximately one-half to three-quarters inch, finger dexterity was normal and there was no other complaint of joint pain other than the right ankle. Ms. Kent was able to walk with the use of a cane but could not stand on her right heel or toe. Dr. Mauro's impression was leg length

discrepancy secondary to fracture and history of right tibia/fibula fracture. Overall, her physical examination revealed adequate finger dexterity, sitting tolerance and ambulation skills to perform sedentary type activities. Dr. Mauro felt she would have difficulty performing work that required significant walking. She was literate and had a high school diploma (tr. 166-168).

After the ALJ's unfavorable decision her attorney provided additional records from a Dr. Sloan to the Appeals Council for consideration. There were three entries. On October 12, 2003 Ms. Kent's chief complaints were with her sinuses and a rash. There was no mention of leg or ankle problems (tr. 189). Ms. Kent told Dr. Sloan of her right leg pain on July 20, 2006. She indicated that she had leg length discrepancy with pain and muscle spasm, and that her orthopedic surgeon had moved out of the area six months earlier. Dr. Sloan prescribed a month's supply of Mobic with two refills (tr. 188). Ms. Kent returned on November 17, 2006 complaining of right ankle pain, and Dr. Sloan recommended that she follow up with an orthopedist (tr. 187).

## DISCUSSION

Ms. Kent argues that the ALJ erred in applying the medical vocational guidelines (grids), in failing to develop the record, and in failing to include Ms. Kent's non-exertional limitations in applying the grids, and that she was disabled from her onset date. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Ms. Kent was not disabled, in light of her physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.    <u>Medical vocational guidelines and non-exertional limitations.</u>

Ms. Kent's first and third grounds for reversal - failing to apply the grids properly and failing to include non-exertional limitations in applying the grids -

overlap significantly, and are combined here for ease of discussion.  In 1978 the Commissioner promulgated medical vocational guidelines ("grids") to help alleviate the need for vocational expert testimony to determine whether work existed in the national economy within a claimant's capabilities. 20 C.F.R. Part. 404, Subpart P, Appendix 2 § 200.00.   "Where a plaintiff's qualifications correspond to the job requirements identified by a [grid] rule, the guidelines direct a conclusion as to whether work exists that the plaintiff could perform.  If such work exists, the plaintiff is not considered disabled."  *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952,1955, 76 L.Ed.2d 66 (1983).  However,"where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case …."  20 C.F.R. Part. 404, Subpart. P, Appendix 2 § 200.00(a). Thus, each of these findings must be supported by substantial evidence.

Plaintiff argues that, because she had non-exertional impairments, the ALJ erred by using the grids to determine whether she was disabled. Once a claimant shows that her impairment prevents her from performing her past relevant work, the burden shifts to the Commissioner, "who must produce evidence to show that the claimant is able to perform alternative substantial gainful work that exists in the national economy." *Cowart v. Schweicker*, 662 F.2d 731, 736 (11th Cir.1981).  An ALJ may use the grids to aid in determining "whether [a] claimant has the ability to adjust to other [jobs] in the national economy."   *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40. The grids are:

> a series of matrices which correlate a set of variables-the claimant's residual functional capacity ( i.e., the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix a finding of disabled or not disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir.1985) (per curiam).  "In appropriate circumstances, the grids may be used" instead of the testimony of a Vocational Expert ("VE") to establish whether such work exists and, in turn, whether the

claimant is "disabled." *Allen v. Sullivan*, 880 F.2d 1200, 1201-02 (11ᵗʰ Cir.1989) (per curiam). However,

> [w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the [ALJ]'s preferred method of demonstrating that the claimant can perform other jobs is through testimony of a VE.

*Jones v. Apfel*, 190 F.3d 1224, 1229 (11ᵗʰ Cir.1999) (citations omitted). Reliance on the grids is proper where substantial evidence supports the ALJ's determination that the claimant's non-exertional impairments did not significantly limit his ability to perform specified types of work. *Sryock v. Heckler*, 764 F.2d 834, 836 (11ᵗʰ Cir.1985) (per curiam); *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11ᵗʰ Cir. 2004).

According to the Social Security regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To the extent that plaintiff argues that the existence of *some* non-exertional limitations precludes the use of the grids, her argument is without merit. See *Sryock*, 764 F.2d at 836. Instead, the question the court must answer is whether substantial evidence supports the ALJ's findings that plaintiff's non-exertional impairments do not limit her ability to perform sedentary work. *Id.* After a thorough review of the record, the court concludes that this question must be answered in the affirmative.

Ms. Kent argues that because the ALJ found her "history of lower extremity fracture with leg length discrepancy" to be severe, he must also have found, at least

by implication, that she suffered severe pain.  That is not the case.  In determining plaintiff's RFC, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence. . . ."  (Tr. 19).  The ALJ noted Ms. Kent's testimony that she prepared some meals and tidied up, that she used primarily non-prescription medication, that she could lift ten pounds, that she could stand for 30-45 minutes at a time and could sit for three to four hours during an eight hour day (tr. 20).  He further noted that although Ms. Kent indeed had a leg fracture that required open reduction with internal fixation and insertion of an IM rod, the fracture had long since been fully healed (*id.*).   The ALJ then concluded that Ms. Kent's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible (*id.*).

As the court is well aware, in *Brady  v. Heckler*, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test later adopted by the Commissioner in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> [s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue.  And the ALJ's findings must be supported by substantial evidence.  Because the clinical evidence in the record provides substantial evidence that Ms. Kent's non-exertional

impairments would not significantly limit her ability to perform sedentary work, the ALJ correctly relied on the grids to determine that she Kent was not disabled. See *Sryock*, 764 F.2d at 836; *Phillips*, 357 F.3d at 1242.

Ms. Kent relies on the psychological report of Dr. Horvat to argue that she also had severe mental problems that would limit her ability to work. However, the ALJ rejected Dr. Horvat's conclusion that Ms. Kent suffered from pain disorder and major depressive disorder because he rejected Ms. Kent's subjective complaints of pain, which formed the basis of Dr. Horvat's opinion. Furthermore, the ALJ found that plaintiff's depressive disorder did not cause more than minimal limitation in her ability to perform basic mental work activities, and was therefore not severe (tr. 18). This finding is supported by substantial record evidence.

Finally, citing *Sryock*, Ms. Kent contends that the ALJ erred because she did not make a specific finding as to whether the non-exertional impairments were severe enough to preclude sedentary work (doc. 16, p. 12). The ALJ did not make such a specific finding. However, the *Sryock* court stated that he ALJ *should* make such a finding, not that he must. *Sryrock*, 764 F.2d at 836. The ALJ made it clear that although Ms. Kent had pain, her pain was not sufficient to prevent her from doing sedentary work. As noted above, there was substantial record evidence to support this finding and Ms. Kent is not entitled to reversal on this ground.

2.    Failure to develop record.

Ms. Kent also contends that the ALJ erred by not following up on Dr. Horvat's recommendation that her intellectual and memory functions be determined. The Social Security disability benefits process is inquisitorial rather than adversarial, *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), *Crawford & Company v. Apfel*, 235 F.3d 1298 (11th Cir. 2000), and is informal. *Richardson v. Perales*, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b). With informality comes a duty to develop a complete record as is done by European

magistrates. *Kendrick,* 998 F.2d at 456. It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even though the plaintiff is represented by a lawyer or paralegal. *Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir.Unit B July 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735). This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Company, supra*, 235 F.3d at 1304.

That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence. Rather, he must have sufficient evidence to decide the case. The seminal cases in this circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision. Where he has sufficient information to decide the case, however, he can do so. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made). Moreover, "[t]he claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a), (c).

Ms. Kent did not mention any intellectual problems or memory problems in her disability report (tr. 100-05). At the hearing Ms. Kent testified cogently, described her problems in detail, recalled her medical history, made no mention of intellectual or memory problems, and thus gave no indication that Dr. Horvat's recommendation needed to be pursued. None of the treating or examining physicians recorded any complaint by Ms. Kent that she had intellectual or memory problems. Finally, the ALJ noted that Ms. Kent had previously worked as a store clerk, pizza baker, certified nursing assistant, cashier, sewing machine operator and shirt folder. None of these jobs support a claim of significant impairment in intellectual functioning or memory, particularly the position of certified nursing assistant.[1] There was sufficient evidence upon which the ALJ could rely to make her decision and Ms. Kent is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of April, 2010.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[1]The Dictionary of Occupational Titles published by the United States Department of Labor rates the mental requirements of this position as: Reasoning Level 3 (commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form, deal with problems involving several concrete variables in or from standardized situations); Mathematical Level 2 (add, subtract, multiply and divide all units of measure, perform the four operations with like common and decimal fractions, compute ratio, rate and percent, draw and interpret bar graphs, perform arithmetic operations involving American monetary units): and Language Level 2 (passive vocabulary of 5000-6000 words, read at rate of 190-215 words per minute, read adventure stories and comic books looking up unfamiliar words in dictionary for meaning, spelling and pronunciation, read instructions for assembling model cars and airplanes, write compound and complex sentences using cursive style, proper end punctuation, and employing adjectives and adverbs, speak clearly and distinctly with appropriate pauses, emphasis and correct pronunciation variations in word order using present, perfect and future tenses).

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**